# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

DEDRIC GRIFFIN                                    CIVIL ACTION

VERSUS                                            NO. 08-5098

BURL CAIN, WARDEN                                 SECTION "S" (6)

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing. For the following reasons, it is hereby recommended that the instant petition be **DENIED WITH PREJUDICE**.

# I. PROCEDURAL HISTORY[1]

On March 2, 2000, petitioner, Dedric Griffin, presently incarcerated in the Louisiana State Penitentiary located in Angola, Louisiana, was charged by an Orleans Parish grand jury with the first degree murder of Tiche Carter, when he had the intent to kill or inflict great bodily harm on more than one person, namely Carter's cousin, Patrick Parker, who survived a severe gunshot wound to the neck. Following his arraignment, petitioner retained Jasper Pharr as counsel. Because his client was charged with first degree murder, Pharr filed a motion to appoint an attorney to sit second chair at trial. The court appointed the Orleans Indigent Defender Office ("OIDP"). Petitioner's first trial in Orleans Parish Criminal District Court ended in a mistrial due to a deadlocked jury.

In May, 2001, new trial proceedings commenced. During the first break, on May 22, 2001, defense counsel Pharr presented a notice of conflict of interest to the court and made a record of his prior involvement with Parker, the State's star witness. Parker had been represented by Pharr in two prior guilty pleas and Pharr had signed the waiver of rights forms. The trial court ruled that the conflict of interest was evident and Pharr could not represent petitioner. The State then moved to remove the OIDP attorneys currently associated with the case because the attorneys were tainted with the conflict of interest as well. The trial court ruled that the OIDP attorneys and OIDP, as well as Pharr, were removed

---

[1]A portion of petitioner's procedural history was obtained from the Louisiana Fourth Circuit Court of Appeal's opinion, *State v. Griffin*, 838 So.2d 34 (La. App. 4 Cir. 2003).

from the capital case.

Griffin filed a writ application with the Louisiana Fourth Circuit Court of Appeal, arguing that the trial court erred in removing the OIDP attorneys from the case. The Louisiana Fourth Circuit granted the writ application and reversed the judgment of the trial court.

New trial proceedings commenced, with voir dire taking place, on February 19, 2002.[2] On February 20, 2002, petitioner was found guilty of first degree murder by virtue of a unanimous verdict from a twelve-person jury.[3] On February 21, 2002, Orleans Parish Criminal District Court Judge Sharon Hunter, who presided over petitioner's trial, sentenced petitioner to life imprisonment without benefit of parole, probation or suspension of sentence.[4] On January 15, 2003, the Louisiana Fourth Circuit Court of Appeal affirmed petitioner's conviction and sentence. *State v. Griffin*, 838 So.2d 34 (La. App. 4 Cir. 2003). On November 7, 2003, the Louisiana Supreme Court denied petitioner's writ application, *State v. Griffin*, 857 So.2d 515 (La. 2003), thereby rendering petitioner's conviction and life sentence final.

Following the conclusion of his direct appeal proceedings, petitioner sought post-conviction relief. On April 13, 2007, and May 25, 2007, evidentiary hearings were

---

[2]The February 19, 2002 voir dire transcript is contained in the State rec., vol. 5 of 8.

[3]*See* State rec., vol. 5 of 8, transcript of trial taken on February 20, 2002, pp. 263-264.

[4]*See* State rec., vol. 5 of 8, transcript of trial taken on February 21, 2002, p. 93.

conducted in connection with petitioner's post-conviction application before the Honorable

Benedict Willard.[5]  On August 10, 2007, Judge Willard denied petitioner's application for

post-conviction relief.[6]  On November 2, 2007, the Louisiana Fourth Circuit Court of Appeal

likewise denied petitioner post-conviction relief, issuing a two-word decision, "WRIT

DENIED".  *State v. Griffin*, No. 2007-K-1279 (La. App. 4 Cir. Nov. 2, 2007) (unpublished

decision).[7]  On September 19, 2008, the Louisiana Supreme Court, in a one-word decision,

"Denied",  denied petitioner's writ application.  *State v. Griffin*, No. 2007-KP-2297, 992

So.2d 962 (La. 2008).

On December 2, 2008, petitioner filed the instant action for federal habeas

corpus relief, raising the following claims: 1) He was indicted by an unconstitutionally

empaneled grand jury; 2) counsel erred in failing to have the court rule on his motion to

quash the indictment on the basis of an unconstitutionally empaneled grand jury; 3) the trial

court erred in not excluding from evidence petitioner's damaging testimony from his first

trial; 4) counsel was ineffective in not having petitioner's damaging testimony from his firsrt

trial excluded from evidence in his later trial; 5) counsel was ineffective in not allowing

---

[5]Copies of the transcript from these evidentiary hearings are contained in the State rec.,
vol.  7 of 8.

[6]The court's ruling in this regard is evidenced by a minute entry, a copy of which is
contained in the State rec., vol. 7 of 8.

[7]A copy of the state appellate court's unpublished decision is contained in the State rec.,
vol. 7 of 8.

petitioner to testify; 6) counsel, as a result of his heavy workload, was ineffective in failing to perform a proper investigation and interview witnesses; and, 7) counsel from both petitioner's first trial and subsequent trial were ineffective in failing to properly cross-examine witnesses, in particular, Patrick Parker, thereby denying petitioner his right to confront witnesses.

In its initial response (rec. doc. 10), the State asserted that the instant matter should be dismissed as time-barred. On May 11, 2010, the magistrate judge issued a Report and Recommendation (rec. doc. 11) determining that petitioner's habeas petition was, in fact, timely, and recommending that the State be ordered to submit a second response addressing petitioner's claims. Neither party filed any objection to the magistrate judge's May 11, 2010 Report and Recommendation.[8] On June 15, 2010, the district court issued an Order (rec. doc. 13) adopting the magistrate judge's Report and Recommendation and ordering the State to submit a second response.

In its second response (rec. doc. 20), the State argued that petitioner, with regard to some of his claims, had failed to exhaust his state court remedies as required under *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). On August 10, 2010, the magistrate judge issued a Report and Recommendation determining that petitioner had

---

[8]In fact, the State, on June 11, 2010, submitted a pleading (rec. doc. 12) specifically advising that it had no objection to the magistrate judge's May 11, 2010 Report and Recommendation.

failed to exhaust three of his claims, "namely, that counsel was ineffective in not allowing him to testify, that counsel was ineffective for failing to investigate the facts and interview witnesses, and, that counsel was ineffective in failing to effectively cross-examine witnesses." (Rec. doc. 21, p. 9). Accordingly, the undersigned determined that petitioner had presented the court with a "mixed" petition and recommended that the matter be dismissed without prejudice for failure to exhaust, but advised that "[i]f petitioner decides to abandon his unexhausted claims, he should notify the court of his decision . . . and the magistrate judge will consider the merits of petitioner's exhausted claims." (Rec. doc. 21, p. 11, fn. 17).

On August 27, 2010, petitioner filed a "Memorandum of Law in Support" wherein he requested "that this Honorable Court grant Motion to Dismiss all Grounds for Relief which have not been Fully Exhausted through the State Courts . . . allowing his habeas petition to proceed wherein this Honorable Court may view his remaining claims in accordance with law." (Rec. doc. 22, p. 7). On September 9, 2010, the district court, in accordance with petitioner's request, ordered that petitioner's unexhausted claims be dismissed, and referred the matter to the undersigned "for consideration of and a report and recommendations on the merits of petitioner's exhausted claims." (Rec. doc. 23).

In accordance with the district court's referral, the undersigned will address the merits of petitioner's exhausted claims, namely, that he was indicted by an unconstitutionally empaneled grand jury, that counsel erred in failing to have the court rule on his motion to

quash the indictment on the basis of an unconstitutionally empaneled grand jury, that the trial court erred in not excluding from evidence petitioner's damaging testimony from his first trial, and that counsel erred in failing to have damaging testimony from first trial excluded from evidence. The court, however, shall first review the pertinent facts and applicable standard of review.

## II. **FACTS**[9]

Detective Ricky Hunter testified that he found two separate blood trails at the scene: one leading to the apartment where Carter died, and the other leading to a place on the street where Parker had collapsed. He also found crack cocaine upstairs at 2525 Banks Street on a file cabinet. He took statements from the man, William Thomas, who lived in the apartment, and from Elton Bolman, an eleven-year-old who had witnessed the incident. The next night, he met with Parker at the hospital. Parker, who could not speak, mouthed to the detective, "Talk to my girlfriend." Catrina Colbert, Parker's girlfriend, gave Hunter a note that read, "I want you to find out why did DD[10] do this to me and my cousin Shipe."[11] Colbert took Hunter to "DD's" house, 3230 Toulouse Street, where she said she and Parker had been on previous occasions. By researching the address, Hunter learned that Dedric

---

[9]The facts were obtained from the Louisiana Fourth Circuit's opinion, *State v. Griffin*, 838 So.2d 34 (La. App. 4 Cir. 2003).

[10]"DD" is a nickname for Dedric Griffin.

[11]"Shipe" was Carter's nickname.

Griffin lived there, and that he owned a champagne-colored Oldsmobile Aurora. After assembling a photographic line-up that included Griffin's picture, Hunter returned to the hospital where Parker identified Griffin. Dedric Griffin later turned himself in to police.

Parker testified that on the day of the incident, he and his cousin, Tiche Carter, were spending the day together. They were standing in front of 2525 Banks Street, when Griffin, a childhood friend, pulled up in front of the house, driving a champagne-colored Aurora. Griffin asked Parker and Carter if they had seen an individual named Derrick. All of the men knew each other. Parker and Carter said they had not seen Derrick, so Griffin pulled away. About two minutes later, Derrick arrived. Griffin came walking from around the corner, and the four men began talking and laughing. While the men were talking, Parker's father walked by with Parker's stepbrother on the way to a shop on S. Rocheblave Street. After his father left, Parker and Tiche Carter went upstairs at 2525 Banks so that Carter could "chop up" the crack that Carter purchased from Derrick. Parker admitted that he knew he was violating his parole by associating with people with drugs, but he took the risk because of his close relationship with his cousin. As Parker and Carter went up the stairs, Griffin and Derrick came down. Within minutes, Griffin returned upstairs. Parker and Carter were both facing the door when Griffin appeared in the doorway with a gun. Parker testified that he flinched, and Griffin shot him in the neck. Parker briefly lost consciousness, and when he "came to," he saw Carter running from the room. Griffin was firing at Carter's

back as Carter ran to the back of the house.  Parker hopped up and ran out of the house, with Griffin now chasing him. Griffin chased him down the street toward S. Rocheblave.  Parker could hear the gun clicking, but no more shots were fired.  Griffin then turned around and headed back towards S. Dorgenois Street.

Parker admitted that Carter had used heroin that morning, and that he himself was in jail on a contempt of court charge at the time of his trial testimony.

The State introduced testimony that Griffin had given in his earlier trial through the court reporter that had transcribed it.  Defense counsel had elicited the testimony.  Griffin testified that he had a prior conviction for possession of marijuana.  He said he talked to Carter on December 9, 1999, about purchasing marijuana.  Carter told him to pick up the drugs on December 11, 1999, at 2525 Banks Street.  He parked and spoke to one of Carter's female cousins who worked in a beauty salon on the corner.  He did not notice anyone else in the area.  He walked into 2525 Banks and up the stairs.  He found Carter bagging a large amount of drugs on a file cabinet.  Within a minute, he heard the floor crack and turned to see a man wearing a red handkerchief around his face with a gun drawn.  Griffin admitted that he was carrying a gun, and that he shot the man wearing the handkerchief because he was scared.  Griffin claimed he did not know the man. (He learned later in a newspaper report that he had shot the man in the throat.)  Carter then pulled a gun, so Griffin shot at him several times and fled.  All three men ran in different directions.  He admitted he knew

Parker and his girlfriend, Trina.

Under cross-examination, Griffin admitted he owned the Aurora. He asserted that he did not know the man referred to as Derrick. Griffin believed that Detective Hunter had lied and that, contrary to other reports, there had been no children playing in the street when he arrived. Griffin claimed that he shot Parker straight on, and that Carter was facing him when he shot him. He admitted he knew he was not supposed to carry a gun as a convicted felon.

The pathologist employed by the coroner's office, Dr. James Traylor, said Carter had been shot twice. One injury was a graze wound. The other injury was a gunshot that "obviously" entered through the back, hit the heart and right lung, and exited out of the front of the body.

## III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams[ v. Taylor*, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

## IV. ANALYSIS

### A. UNCONSTITUTIONALLY EMPANELED GRAND JURY

Petitioner argues that his conviction is unconstitutional because the grand jury was selected in a racially or sexually discriminatory manner. Petitioner raised this same claim in connection with his direct appeal and the Louisiana Fourth Circuit Court of Appeal rejected petitioner's claim, finding that petitioner had waived his argument based upon his failure to raise an objection as required under La.C.Cr.P. art. 841. *State v. Griffin*, 838 So.2d 34, 38 (La. App. 4th Cir. 2003).

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir.1997); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir.1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. *Amos*, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and

expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902. When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 802, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

For this state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. *Amos*, 61 F.3d at 338. To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover*, 128 F.3d at 902. A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id.*

In the instant situation, the Louisiana Fourth Circuit issued the last reasoned decision, clearly declining, based on the procedural ground that petitioner failed to lodge a contemporaneous objection, to review petitioner's claim regarding the allegedly unconstitutionally empaneled grand jury. It is well-settled that Louisiana's contemporaneous objection rule is an independent and adequate state procedural ground. *Duncan v. Cain*, 278

F.3d 537, 541 (5th Cir.2002) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87-88, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  When the state court relies on this procedural default in dismissing the claim, as it did here, the claim is immune from federal review.  *Id.*

A federal habeas petitioner, however, may be excepted from the procedural default rule if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262; *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.  *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).  The mere fact that petitioner failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.  *Id.* at 486.

In this case, petitioner suggests that because defense counsel erred in not raising an objection to the trial court's failure to quash his indictment, the issue should not be waived pursuant to La.C.Cr.P. art. 841.  (Rec. doc. 1, "Petition for Writ of Habeas Corpus", p. 36).  However, such a misstep on the part of counsel is clearly not a "factor

external to the defense" as required to constitute cause. Accordingly, the court finds that petitioner has failed to make the requisite showing of cause to justify his failure to comply with the requirements of La.C.Cr.P. art. 841.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue*, 131 F.3d 466, 497 (5th Cir.1997) (citing *Engle*, 456 U.S. at 134 n. 43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir.1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir.1977)).

The instant claim is therefore procedurally barred from review by this federal habeas corpus court absent a showing that a fundamental miscarriage of justice will occur if the merits of the claim are not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)). To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902. To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to his guilt. *Campos v. Johnson*, 958 F.Supp. 1180, 1195 (W.D.

Tx.1997) (footnote omitted); *Nobles v. Johnson*, 127 F.3d 409, 423 n. 33 (5th Cir. 1997),

*cert. denied*, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998) (actual innocence

factor requires a showing by clear and convincing evidence that "but for constitutional error,

no reasonable factfinder would have found the applicant guilty of the underlying offense.")

When the petitioner has not adequately asserted his actual innocence, his procedural default

cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128

F .3d at 903.

Petitioner does not present and the record does not contain evidence that

suggests his actual innocence. Accordingly, petitioner has failed to overcome the procedural

bar to the instant claim. As such, the claim is procedurally barred and must be dismissed

with prejudice for that reason.

### B. COUNSEL ERRED IN FAILING TO HAVE COURT RULE ON MOTION TO QUASH INDICTMENT

While defense counsel filed a motion to quash the indictment based upon an

allegedly unconstitutionally empaneled grand jury, petitioner argues that counsel was

ineffective due to his failure to ensure that the trial court ruled on the pending motion to

quash.

The seminal Supreme Court decision regarding ineffective assistance of

counsel is *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d

674 (1984), wherein the Court held that in order to prove that counsel was unconstitutionally ineffective, petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.

Under the deficient performance prong of the *Strickland* test, "it is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371, 113 S.Ct. 838, 844, 122 L.Ed. 2d 180 (1993), *citing Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. To prove prejudice under the *Strickland* standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. As reflected below, petitioner has failed to satisfy his burden of proof.

As set forth in *Rideau v. Whitley*, 237 F.3d 472, 484-485 (5th Cir. 2000) (citing *Rose v. Mitchell*, 443 U.S. 545, 565 (1979)), "to be entitled to habeas relief [in a case alleging unconstitutional grand jury selection,] a claimant is required to *prove discrimination* under the standards set out in the Supreme Court's cases [emphasis added]." The Supreme Court in *Campbell v. Louisiana*, 523 U.S. 392, 396 (1998), emphasized that the criminal defendant must show, as a precondition to raising a third-party due process or equal

protection challenge, that he suffered an "injury in fact" from the exclusion of African-Americans from the grand jury. The Court explained:

> Regardless of his or her skin color, the accused suffers a significant injury in fact when the composition of the grand jury is tainted by racial discrimination. Discrimination on the basis of race in the selection of members of a grand jury . . . strikes at the fundamental values of our judicial system because the grand jury is a central component of the criminal justice process.

*Id*. at 398 (quotation omitted). Furthermore, "[t]o assert the rights of those venirepersons who were excluded from serving on the grand jury in his case, [petitioner] must prove their exclusion was on account of intentional discrimination." *Id*.

In the instant case, petitioner has not demonstrated any race or gender[12] discrimination in the selection of the grand jury that indicted him. In connection with this claim, petitioner has not attached to his petition any supporting documentary evidence. Instead, petitioner merely relies on alleged data from "multiple prior cases", for which he provides no citation, where it has "been established . . . that African Americans have been systematically excluded from participation as [grand jury] forepersons in Orleans Parish." (Rec. doc. 1, "Petition for Writ of Habeas Corpus", p. 30). Petitioner states:

> The data has revealed between 1987 and 2000 that white judges select white people as forepersons 74% of the time, black people as forepersons 26% of the

---

[12]The United States Supreme Court ruled long ago that exclusion of women from a federal grand jury panel was unconstitutional. *Ballard v. United States*, 329 U.S. 187, 195-96 (1946); *see also J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994) (gender-based peremptory challenges to petit jurors violate the Constitution).

time. Although white people comprised an average of 44% of the registered voters in Orleans Parish, black people were under represented by 32%, while white people were over represented by 30%.

Further, [male] judges selected males between (1987 and 2000) as forepersons 64% of the time, even through [sic] males comprise an average of 43% of the registered voters in Orleans Parish. Male judges selected females as forepersons 36% of the time even though females comprise 57% of the voters of Orleans Parish. [Rec. doc. 1, pp. 30-31.]

The above generalized showing of alleged discrimination, without supporting documentation, is insufficient for the purpose of attaining habeas corpus relief. *See Cosse v. Cain*, Civil Action No. 08-1214, doc. # 10 (E.D. La. June 27, 2008) (Report and Recommendation, Magistrate Judge Joseph C. Wilkinson, Jr.) (petitioner's reliance on statistics from other cases insufficient to prove grand jury in his case was unconstitutionally empaneled or that indictment was defective); *Landry v. Cain*, Civil Action No. 09-7561, doc. # 13 (E.D. La. Sept. 16, 2010) (Report and Recommendation, Magistrate Judge Alma L. Chasez) (claim of unconstitutionally empaneled grand jury denied in the absence of documentary evidence supporting claim); *Wilson v. Cain*, 2005 WL 1869059, *5 (M.D. La. July 29, 2005) (no basis upon which to conclude that counsel's failure to file motion to quash was deficient where petitioner failed to submit evidence supporting his claim that his grand jury was unconstitutionally empaneled).

Petitioner also argues that counsel was ineffective in failing to ensure that his motion to quash the indictment was adjudicated by virtue of the fact that La.C.Cr.P art.

413(C), pursuant to which his grand jury was chosen, was declared unconstitutional by the Louisiana Supreme Court. In *State v. Dilosa*, 848 So.2d 546 (La. 2003), the Louisiana Supreme Court determined that La. C. Cr. P. art. 413(C), which set forth the process for selection of grand juries in Orleans Parish at the time an Orleans Parish grand jury indicted petitioner, failed to provide the procedural protections required by the Louisiana Constitution. *Id*. at 546.[13] Federal habeas corpus relief, however, may be granted only when a petitioner has suffered a violation of his or her rights under the United States Constitution. 28 U.S.C. § 2254; *Engle v. Isaac*, 456 U.S. 107, 119, (1982). Because the constitutional rights addressed in *Dilosa* were state constitutional rights, federal habeas corpus relief is not available to petitioner. *Davis v. Jones*, 2006 WL 1540114 at *2 n.11 (E.D. La. 2006). As Magistrate Judge Alma L. Chasez noted in her Report and Recommendation issued in *Varnado v. Cain*, Civil Action 02-1286 c/w 03-753 and 03-754, doc. no. 28, p. 5 (E.D. La. Feb. 2, 2004), "<u>Dilosa</u> affords [petitioner] no solace because it is axiomatic that federal habeas relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice."

---

[13]La.C.Cr.P. art. 413(C), prior to its repeal by Acts 2001, No. 281, §§1,2, provided:

In the parish of Orleans, the court shall select twelve persons plus a first and second alternate for a total of fourteen persons from the grand jury venire, who shall constitute the grand jury. The court shall thereupon select one of the jurors to serve as foreman.

## C. FAILURE TO EXCLUDE PETITIONER'S DAMAGING TESTIMONY FROM FIRST TRIAL

Petitioner claims that his constitutional rights were violated when the trial court refused to exclude from evidence damaging testimony provided by petitioner in connection with his first trial. According to petitioner, his testimony from his first trial should have been excluded because it was provided as a result of a conflict of interest on the part of his defense counsel, Jasper Pharr. Before setting forth the reasoning behind petitioner's claim, and why said reasoning is flawed, the following background information is warranted.

### 1. Background

Jasper Pharr represented petitioner in connection with his first trial which ended in a mistrial due to a deadlocked jury. Petitioner, on the advice of Pharr, took the witness stand, providing testimony in an effort to support his claim of self-defense.

Shortly after petitioner's second trial commenced, Pharr notified the court of a conflict of interest. The conflict of interest arose as a result of the fact that Pharr had represented Patrick Parker, the State's star witness, in connection with two prior criminal proceedings which had resulted in guilty pleas. Upon notification of this conflict of interest, the trial court declared a mistrial and Pharr was removed from the case.

In his third trial, the State sought to introduce petitioner's first trial testimony into evidence. Petitioner's new counsel, Dwight Doskey, sought to exclude petitioner's

testimony. The trial court denied Doskey's motion, allowing petitioner's testimony from his first trial to be read to the jury at petitioner's third trial.

### 2. Reasoning Behind Petitioner's Claim

Pharr attained privileged information regarding Parker as a result of his representation of Parker in two prior criminal proceedings which resulted in guilty pleas. Because said information was privileged, it could not be used by Pharr to aggressively cross-examine Parker. Petitioner contends that it was because of this handicap, i.e., his inability to properly cross-examine Parker, that Pharr misguided petitioner in advising him to take the witness stand. This bad advice was prompted by Pharr's attempt to compensate for his conflict of interest and, for this reason, said testimony should have been excluded from evidence in petitioner's later trial.

### 3. Errors in Reasoning

One fatal flaw in petitioner's reasoning, as recognized by the Louisiana Fourth Circuit in rejecting the instant claim, is that "Pharr did not even realize at the time of the first trial that he had represented Parker in the earlier guilty pleas...." *Griffin*, 838 So.2d at 39-40. Thus, Pharr was in no way handicapped in his representation of petitioner at the first trial as a result of his conflict of interest.

Additionally, petitioner sets forth no specifics as to how Pharr's cross-examination of Parker was deficient. He makes no mention of any questions which Pharr

should have asked which he was allegedly precluded from asking because of his conflict of interest.

Finally, petitioner's argument that the trial court erred in denying Doskey's motion to exclude his testimony is based upon the premise that Pharr was deficient, based upon his conflict of interest, in representing him and allowing him to testify. However, the state appellate court specifically rejected petitioner's argument that Pharr was ineffective, reasoning:

> Here, it was clearly a matter of trial strategy to allow Griffin to testify in the first trial. There was no option of raising an identification defense. The only option was to assert self-defense and attack the credibility of Parker, given his record, his involvement in drugs, his involvement in a drug transaction in this case, his being on parole at the time of the crime, and his being in jail at the time of trial. The record in fact supports a finding that self-defense was indeed an intelligent defense to raise. There is no evidence that counsel was deficient. In addition, there is no evidence that Griffin was prejudiced given the strong case of the State, that is, a victim of the shooting, which Dedric Griffin had known for years, survived to tell the story.

*Griffin*, 838 So.2d at 40-41.

## D. COUNSEL ERRED IN FAILING TO HAVE TESTIMONY FROM FIRST TRIAL EXCLUDED FROM LATER TRIAL

Petitioner contends that counsel Dwight Doskey was unconstitutionally ineffective due to his failure to have petitioner's damaging first trial testimony excluded from his later trial. While petitioner acknowledges that Doskey moved to have his earlier

testimony excluded from evidence, he attributes the fact that the motion was denied to a deficiency on Doskey's part. Petitioner, however, fails to set forth what argument Doskey failed to raise in order to persuade the trial court to exclude petitioner's first trial testimony. As such, petitioner has failed to show any deficiency in Doskey's performance in this regard and, therefore, has failed to satisfy his burden of proof under *Strickland*, *supra*.

Accordingly;

## **RECOMMENDATION**

It is hereby **RECOMMENDED** that the petition of Dedric Griffin for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** with prejudice.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. §636(b)(1); *Douglass v. United*

*Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996)(*en banc*).[14]

New Orleans, Louisiana, this __22nd__ day of _____September_____, 2010.

LOUIS MOORE, JR.

United States Magistrate Judge

---

[14]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.